## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

KEVIN MCCRAY,        )
                             )
         Petitioner,      )
                             )
        v.             )      Civ.Act.No. 07-191-***
                             )
**JOSEPH W. OXLEY**, Sheriff    )
and **JOSEPH R. BIDEN, III**, Attorney  )
General for the State of Delaware    )
                             )
         Respondents.    )

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

On August 28, 2002, the petitioner, Kevin McCray, was arrested, and he was subsequently indicted on four counts of first degree robbery, four counts of possession of a firearm during the commission of a felony, two counts of second degree burglary, attempted robbery, attempted burglary, kidnapping, and a variety of related offenses. *See* Del. Super. Ct. Crim. Dkt. #0208020744, D.I. 1, 2. In July 2003, McCray pled guilty to two counts of first degree robbery *See* Del. Super. Ct. Crim. Dkt. #0208020744, D.I. 7 McCray was subsequently sentenced to an aggregate of twenty-eight years at Level V incarceration, suspended after sixteen years for Level IV supervision, suspended, in turn, after one year for two years Level III supervision. McCray did not appeal from his July 2003 conviction and sentence. *See* Del. Super. Ct. Crim. Dkt. #0208020744. On April 3, 2007, McCray applied for federal habeas relief. D.I. 2. McCray subsequently filed two

1

motions for postconviction relief, both of which were denied by Superior Court. *See* Del. Super. Ct. Crim. Dkt. #0208020744, D.I. 19, 20. McCray also filed a motion to withdraw his guilty plea in December 2005, which was dismissed without prejudice in February 2006. *See* Del. Super. Ct. Crim. Dkt. #0208020744, D.I. 25

## Facts[1]

Kevin McCray was one of three co-conspirators ("the robbers") involved in a series of burglaries and armed robberies between May and August of 2002. On the evening of May 31, 2002, two of the robbers entered a WSFS Bank branch, located in Newark, Delaware, by cutting a hole in the roof of the building and lowering themselves "down into the bank by way of a rope." The robbers hid in a storage room until a bank teller arrived at the bank the following morning. One of the two robbers ordered the teller to lie on the floor. The robbers then entered the bank's vault and removed $42,929.00. The two men fled the scene in a tan Jeep driven by a third accomplice.

In the early morning hours of August 2, 2002, two of the robbers cut a hole in the front door of United Check Cashing in New Castle, Delaware, and entered the building. This time, however, a witness observed the two men, and he flagged down a passing police officer, who immediately went to the scene. The officer arrived in time to see the two men leave the building and flee. One of the two men, Robert Duncan, was caught after a brief foot pursuit.

On August 12, 2002 a teller at an EZ Check Cashing location in Wilmington, DE was opening the business when one of the robbers, armed with a handgun, ordered her to open the safe. The robber took $11,849.00 and fled the building through the back door.

---

[1] These facts are taken from the Affidavit of Probable Cause.

Upon investigation, the police determined that the robber had cut a hole in the roof of the building and lowered himself into the rear office of the business.

In the late evening of August 27, 2002, the robbers attempted to break into a Wal-Mart store in New Castle, Delaware when the store manager heard noises coming from the roof. When the manager went to the roof, he saw two of the robbers. One of the men pointed a handgun at the manager and ordered him to the ground. The robbers then jumped from the roof and, after threatening another person they encountered, escaped on foot. The police discovered an acetylene torch, a pry bar, and a rope on the roof. A short time later, the police stopped a Jeep, matching the description of the one seen at the United Check Cashing break-in, and a red Honda Accord. The drivers, Kevin McCray and Issiah Howard, were arrested. Howard confessed to the aborted Wal-Mart robbery and told police that it was McCray who had assisted him on the roof.

Discussion

To the extent that Respondents are able to discern, McCray raises three grounds for relief in his federal habeas petition: (1) ineffective assistance of counsel; (2) insufficient questioning by the Superior Court into his mental status; and (3) a violation of the federal Speedy Trial Act, 18 U.S.C. §3161. D.I. 2. McCray, however, is not entitled to relief because the claims presented in his petition are untimely under 28 U.S.C. §2244(d) and, additionally, are unexhausted.

McCray's petition, filed in April 2007, is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law on April 24, 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d

3

428, 433 n. 1 (D.Del. 1998).    Because McCray did not appeal his convictions to the Delaware Supreme Court, they became final on January 5, 2004, thirty days after Superior Court imposed sentence upon McCray, and the end of the period in which McCray could appeal. *See* DEL. SUP. CT. R. 6(a)(ii); Del. Code Ann. tit. 10  §147. Accordingly, McCray had until January 5, 2005 to file a timely habeas petition.  28 U.S.C. §2244(d)(1).  McCray's petition, dated March 13, 2007, is obviously filed past the January 2005 deadline.  The petition is thus untimely and must be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

The tolling mechanism of §2244(d)(2) cannot save McCray's petition from the running of the limitations period.    *See* 28 U.S.C. §2244(d)(2).    When applicable, §2244(d)(2) tolls the one-year period of §2254(d)(1) during the time that a properly filed state postconviction action is pending in the state courts.    Section 2244(d)(2) provides only that the limitations period is tolled for the time that a motion for state postconviction relief is pending, but it does not stop the limitations clock from running until all state postconviction motions are decided. *See Marvel v. Dep't of Correction*, Civ. Act. No. 97-568-LON, order at ¶9 (D.Del. Nov. 17 1998).  McCray's first postconviction motion, filed on August 5, 2005, did not serve to toll the limitations period, because it was filed after the limitations period had run. *Williams v. Taylor*, 2002 WL 1459530 at *2 (D. Del. 2002) (Ex. A).    Thus the statutory tolling provisions of §2244(d)(2) are of no aid to McCray.

Of course, as the Court has repeatedly noted, the limitation period might be subject to equitable tolling.  Equitable tolling, however, applies only where the petitioner

4

"has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Reading McCray's petition liberally, McCray has alleged that his mental incompetence prevented him from asserting his rights, both in the state courts and here. "[M]ental incompetence is not a *per se* reason to toll a statute of limitations. Rather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition." *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) (citation omitted). "[A] mental condition that burdens but does not prevent a prisoner from filing a timely petition does not constitute 'extraordinary circumstances' justifying equitable tolling." *United States v. Harris*, 268 F.Supp.2d 500, 506 (E.D. Pa. 2003) (citation omitted). McCray bears the burden of showing that his mental illness prevented him from filing his petition in a timely manner. *See Thomas v. Carroll*, 2002 WL 1858778 at *3 (D. Del. 2002) (Ex. B); *Rogers v. Snyder*, 2001 WL 652032 at *4 n. 10 (D.Del. 2001) (Ex. C). While it is uncontested that McCray suffered some from some sort of mental illness which delayed his trial on federal criminal charges, he has not shown that his mental incompetence prevented him from complying with the one year statutory time limit. Like the petitioner in *Thomas*, McCray has failed to allege the nature of the mental illness he suffered or suffers, any limitations he experienced because of the illness, or how "any such illness prevented him from pursuing postconviction remedies." *Id.* Accordingly, McCray's petition must be dismissed as untimely.

McCray has also failed to exhaust all state remedies available to him before seeking federal habeas relief. A state petitioner seeking federal habeas relief must first exhaust remedies available in the state courts. 28 U.S.C. § 2254(b); *Castille v. Peoples*,

489 U.S. 346, 351 (1989); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Alston v. Redman*, 34 F.3d 1237, 1241-42 (3d Cir. 1994). In order to exhaust state remedies, McCray must have presented to the state courts the legal and factual basis of the claims which he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir. 1990); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). In turn, the claim must have been fairly presented to the state's highest court. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.1997) (citations omitted). Fair presentation requires that the claim be presented in a manner which permits the state's highest court to consider the merits of the case. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Brown v. Allen*, 344 U.S. 443, 448-49 n. 3 (1953). McCray, in a motion to withdraw his guilty plea filed in December 2005, advanced his claims that his attorney was ineffective and that the Superior Court did not enquire into his mental status before accepting his plea. McCray, however, never appealed the Superior Court's February 14, 2006 decision. Further, treating McCray's reference to the federal Speedy Trial Act as a reference to the Speedy Trial Clause, McCray never raised that issue in the state courts.. Accordingly, McCray has not exhausted state remedies on any of his claims.

If, however, there is no available state remedy, then McCray is excused from the exhaustion requirement. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001). He cannot now appeal to the state supreme court: the appeal would be dismissed as untimely under state law. *See Dorsey v. Carroll*, 393 F.Supp.2d 272, 276 (D.Del. 2005). Superior Court, however, has indicated that McCray may still have recourse in a motion for postconviction relief. While the time for filing a

postconviction motion has expired,[2] and though review of McCray's motion would typically be barred because it is repetitive,[3] Superior Court, in its February 2006 Order, indicated that it would consider McCray's motion "after he is restored to competence." *State v. McCray*, February 14, 2006 Ord. at 2 (Del. Super. 2006) (Ex. D). Respondents are unable to ascertain whether McCray has been returned to competence at this time. A fair reading of the Superior Court's February 2006 order thus indicates that McCray can present his allegations to the state courts, and in the absence of a state court decision clearly foreclosing his return to the state courts, McCray has an available state remedy. *See Toulson v. Beyer*, 987 F.2d 984, 987-89 (3d Cir. 1993). Because McCray has an available state remedy, resort to which is not clearly foreclosed, by which to present his claims of ineffective assistance and insufficient inquiry by the trial court, the claims are unexhausted. In turn, because McCray has not exhausted state remedies on any of his claims, the petition must be dismissed in its entirety.

---

[2] Del. Super. Ct. Crim. R. 61(i)(1). Under the rule, McCray had three years from the time that his conviction became final in which to file a state postconviction motion. McCray's conviction became final, for purposes of the rule, on January 5, 2004 – thirty days after Superior Court imposed sentence. DEL. SUPER. CT. CRIM. R. 61(m)(2). Thus, McCray had until January 2007 to move for state postconviction relief.

[3] Del. Super. Ct. Crim. R. 61(i)(2). Prior to filing his motion to withdraw his guilty plea, McCray filed at least two identical motions for postconviction relief in which he did not raise any of the claims raised in his federal habeas petition. *See* Del. Super. Ct. Crim. Dkt. #0208020744., D.I. 19, 20.

## Conclusion

Based upon the Superior Court docket sheets, it appears that transcripts of McCray's colloquy and guilty plea have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

Date: August 3, 2007

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1459530 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Williams v. Taylor
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Derrick R. WILLIAMS, Petitioner,
v.
Stanley TAYLOR, Commissioner, and M. Jane
Brady, Attorney General of the State of Delaware,
Respondents.
**No. CIV.A.02-18-JJF.**

July 3, 2002.

State prisoner filed petition for writ of habeas corpus, challenging conviction of trafficking in cocaine, possession with intent to deliver cocaine, and using a vehicle for keeping controlled substances. The District Court, Farnan, J., held that: (1) one-year limitations period under the Antiterrorism and Effective Death Penalty Act for filing petition began to run day after petitioner's conviction became final; (2) petitioner's filing of state habeas petition and motion for postconviction relief did not toll limitations period; (3) equitable tolling was not warranted on ground that petitioner lacked knowledge of his rights until years after conviction; and (4) petitioner was not entitled to certificate of appealability.

Petition dismissed.
West Headnotes
**[1] Habeas Corpus 197 ⟜603**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 k. Laches or Delay. Most Cited
Cases
One-year limitations period under the Antiterrorism and Effective Death Penalty Act (AEDPA) for filing petition for federal habeas corpus relief began to run day after petitioner's conviction became final. 28 U.S.C.A. § 2244(d)(1).

**[2] Habeas Corpus 197 ⟜603**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 k. Laches or Delay. Most Cited
Cases
Petitioner's filing of state habeas petition and motion for postconviction relief did not toll one-year limitations period under the Antiterrorism and Effective Death Penalty Act (AEDPA) for filing petition for federal habeas corpus relief, since state petition and motion were filed after limitations period expired. 28 U.S.C.A. §§ 2244(d)(1), (2).

**[3] Habeas Corpus 197 ⟜603**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 k. Laches or Delay. Most Cited
Cases
Petitioner's lack of knowledge of his rights under the Vienna Convention until years after his conviction was not an extraordinary circumstance warranting equitable tolling of one-year limitations period, under the Antiterrorism and Effective Death Penalty Act (AEDPA), for filing petition for federal habeas corpus relief. 28 U.S.C.A. § 2244(d)(1).

**[4] Habeas Corpus 197 ⟜818**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
            197III(D)1 In General
                197k817 Requisites and Proceedings
for Transfer of Cause
                197k818 k. Certificate of Probable
Cause. Most Cited Cases
Petitioner was not entitled to certificate of appealability with respect to District Court's dismissal of his habeas corpus petition, where reasonable jurist could not debate that petition was barred by one-year limitations period under the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C.A. §§ 2244(d)(1), 2253(c)(2).

Ex. A
© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 1459530 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Darryl  K.  Fountain,  Esquire,  Wilmington,
Delaware. Attorney for Petitioner.
Elizabeth Roberts McFarlan, Esquire of the State of
Delaware  Department  of  Justice,  Wilmington,
Delaware. Attorney for Respondents.

MEMORANDUM OPINION

FARNAN, District J.

**\*1** Presently before the Court is a Petition for
Habeas Corpus (D.I.1) filed on behalf of Petitioner
Derrick R. Williams. For the reasons set forth be-
low, the Court will dismiss the Petition as time
barred by the one-year period of limitation pre-
scribed in 28 U.S.C. § 2244(d)(1).

I. BACKGROUND

On March 16, 1992, a grand jury in the Delaware
Superior Court charged Petitioner with trafficking
in cocaine, possession with intent to deliver co-
caine, and using a vehicle for keeping controlled
substances. While released on bail awaiting trial,
Petitioner fled to his native land of Jamaica. Even-
tually  he  was  apprehended  and  returned  to
Delaware, where a Superior Court jury found him
guilty as charged. The Superior Court sentenced
Petitioner on May 3, 1996, to fifteen and one-half
years in prison, followed by three years of decreas-
ing levels of supervision. The Delaware Supreme
Court affirmed Petitioner's conviction and sentence.
*Williams v. State,* No. 206, 1996, 1996 WL 637908
(Del. Oct.29, 1996). Petitioner is currently serving
his sentence at the Delaware Correctional Center in
Smyrna, Delaware.

On November 21, 2000, Petitioner filed in the Su-
perior Court a petition for a writ of habeas corpus,
which the Superior Court denied the next day. On
December 6, 2000, Petitioner filed a motion for
postconviction relief pursuant to Rule 61 of the Su-
perior Court Rules of Criminal Procedure. The Su-
perior Court denied the motion as untimely and
procedurally barred. *State v. Williams,* No.
92001939 (Del.Super.Ct. May 30, 2001). The
Delaware Supreme Court affirmed for the same
reasons. *Williams v. State,* No. 299, 2001, 2001 WL
1334791 (Del. Oct.25, 2001).

Through counsel, Petitioner filed the current Peti-
tion seeking federal habeas corpus relief. He alleges
that: (1) he was denied his rights as a Jamaican na-
tional under Article 36 of the Vienna Convention;
FN1 (2) trial counsel rendered ineffective assist-
ance by failing to assert his rights under the Vienna
Convention; and (3) the Superior Court erred in
denying postconviction relief. Respondents assert
that the Petition is subject to a one-year period of
limitation that expired before Petitioner filed it, and
ask the Court to dismiss it as untimely.

> FN1. *See* Vienna Convention on Consular
> Relations, 21 U.S.T. 77 (Apr. 24, 1963).
> Claims for federal habeas relief based on
> violations of the Vienna Convention are
> subject to the procedural requirements of
> the federal habeas statute. *See Breard v.*
> *Greene,* 523 U.S. 371, 376, 118 S.Ct.
> 1352, 140 L.Ed.2d 529 (1998).

II. DISCUSSION

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), Congress amended the
federal habeas statute by prescribing a one-year
period of limitation for the filing of habeas peti-
tions by state prisoners. *Stokes v. District Attorney*
*of County of Philadelphia,* 247 F.3d 539, 541 (3d
Cir.), *cert. denied,* 534 U.S. 959, 122 S.Ct. 364,
151 L.Ed.2d 276 (2001). Effective April 24, 1996,
the AEDPA provides:
(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State
court. The limitation period shall run from the latest
of -
(A) the date on which the judgment became final by
the conclusion of direct review or the expiration of
the time for seeking such review ...

**\*2** 28 U.S.C. § 2244(d)(1).

As described above, the Delaware Supreme Court
affirmed Petitioner's conviction and sentence on
October 29, 1996. Petitioner was then allowed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1459530 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Sup.Ct. R. 13.1. Although Petitioner did not seek review from the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the expiration of the time for seeking [direct] review," as provided in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999) (holding that on direct review, the limitation period begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Petitioner's conviction became final on January 27, 1997, ninety days after the Delaware Supreme Court affirmed his sentence. The Court's docket reflects that Petitioner filed the current Petition on January 4, 2002. [FN2] (D.I.1.)

> FN2. Because Petitioner is represented by counsel, he cannot benefit from the holding of *Burns v. Morton,* 134 F.3d 109 (3d Cir.1998). Under *Burns,* a "pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court." *Id.* at 113.

[1] In short, the one-year period of limitation began running on January 28, 1997, the day after Petitioner's conviction became final. His Petition was filed nearly five years later on January 4, 2002. That, however, does not necessarily require dismissal of the Petition as untimely, because the one-year period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

[2] As described above, Petitioner filed a state habeas petition on November 21, 2000, and a motion for postconviction relief on December 6, 2000. The one-year period, however, expired in January 1998. Because the state habeas petition and the motion for postconviction relief were filed after the one-year period had expired, neither has any tolling effect in this matter. [FN3] *See Fisher v. Gibson,* 262 F.3d 1135, 1142-43 (10th Cir.2001) (stating that application for postconviction relief filed after the expiration of the one-year period has no tolling effect), *cert. denied,* 535 U.S. 1034, 122 S.Ct. 1789, 152 L.Ed.2d 649 (2002); *Trotman v. Snyder,* Civ. A. No. 01-653-JJF, 2002 WL 1348180, *2 (D.Del. June 17, 2002)* (same).

> FN3. The Court need not decide whether either of Petitioner's postconviction filings constitutes "a properly filed application" under § 2244(d)(2). Because each was filed after the one-year period expired, the statutory tolling provision does not apply.

In short, the Court finds that more than one year lapsed before Petitioner filed any application for postconviction relief in the Superior Court. Accordingly, the Court concludes that the statutory tolling provision does not apply.

### C. Equitable Tolling

Additionally, the one-year period of limitation is not jurisdictional and may be equitably tolled. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies: *3 only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1459530 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones*, 195 F.3d at 159 (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir.1998)).

[3] In the instant case, Petitioner asserts that he did not know of his rights under the Vienna Convention until years after his conviction, and that his trial attorney should have advised him of these rights. (D.I.1, ¶¶ 18-19.) Unfortunately for Petitioner, his lack of legal knowledge does not constitute an extraordinary circumstance warranting equitable tolling. *See Delaney v. Matesanz*, 264 F.3d 7, 15 (1st Cir.2001); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir.2000), *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001); *United States v. Cicero*, 214 F.3d 199, 203 (D.C.Cir.2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000). Likewise, in non-capital cases, "attorney error, miscalculation, inadequate research, or other mistakes" do not constitute the extraordinary circumstances required for equitable tolling. *Fahy*, 240 F.3d at 244.

In short, the Court cannot find that any extraordinary circumstances prevented Petitioner from filing his Petition with this Court in a timely manner. For this reason, the Court concludes that the doctrine of equitable tolling does not apply. The Court will dismiss the Petition as time barred.

### D. Certificate of Appealability

Finally, the Court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate

that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

*4 [4] For the reasons discussed above, Petitioner's habeas petition is barred by the one-year period of limitation. Neither the statutory tolling provision nor the doctrine of equitable tolling applies. The Court is convinced that reasonable jurists would not debate otherwise. Petitioner, therefore, has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

### III. CONCLUSION

For the reasons discussed above, the Court will dismiss as untimely the Petition for Habeas Corpus filed on behalf of Petitioner Derrick R. Williams. The Court will not issue a certificate of appealability.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 3rd day of July 2002, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:
1. Petitioner Derrick R. Williams' Petition for Habeas Corpus (D .I. 1) is DISMISSED, and the relief requested therein is DENIED.
2. The Court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2002.
Williams v. Taylor

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 5
Not Reported in F.Supp.2d, 2002 WL 1459530 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


Not Reported in F.Supp.2d, 2002 WL 1459530
(D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2002 WL 1858778 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Thomas v. Carroll
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Wayne C. THOMAS, Petitioner,
v.
Thomas CARROLL, Warden, and Attorney General
of the State of Delaware, Respondents.
**No. Civ.A.02-240-JJF.**

July 30, 2002.

Wayne C. Thomas, Petitioner, pro se.
Loren C. Meyers, of the State of Delaware Depart-
ment of Justice, Wilmington, Delaware, for Re-
spondents.

*MEMORANDUM OPINION*
FARNAN, J.
**\*1** Presently before the Court is a Petition Under 28
U.S.C. § 2254 for Writ of Habeas Corpus by a Per-
son in State Custody (D.I.2) filed by Petitioner
Wayne C. Thomas. Also pending in this matter are
Petitioner's motions for appointment of counsel.
(D.I. 4, 7, and 14.) For the reasons set forth below,
the Court will dismiss the Petition as time barred by
the one-year period of limitation prescribed in 28
U.S.C. § 2244(d)(1). The Court will deny as moot
Petitioner's motions for appointment of counsel.

**I. BACKGROUND**

On March 14, 1997, Petitioner pleaded guilty in the
Delaware Superior Court to robbery, attempted rob-
bery, possession of a firearm during the commis-
sion of a felony, possession of cocaine, and assault.
The Superior Court sentenced Petitioner that same
day to eight years in prison followed by a period of
probation. Petitioner did not file a direct appeal
with the Delaware Supreme Court. He is currently
serving his sentence at the Delaware Correctional
Center in Smyrna, Delaware.

On June 17, 1997, Petitioner moved for a reduction
of sentence, which the Superior Court denied on

August 12, 1997. On April 27, 1999, Petitioner
filed in the Superior Court a motion for postconvic-
tion relief pursuant to Rule 61 of the Superior Court
Rules of Criminal Procedure. The Superior Court
denied the Rule 61 motion. *State v. Thomas,* No.
9512012402, 2000 WL 708992 (Del.Super.Ct. Mar.
23, 2000). After remanding for an evidentiary hear-
ing, the Delaware Supreme Court affirmed. *Thomas
v. State,* No. 152, 2000, 2001 WL 760860 (Del.
May 17, 2001).

Petitioner has now filed with the Court the current
Petition seeking federal habeas corpus relief.
(D.I.2.) Respondents assert that the Petition is sub-
ject to a one-year period of limitation that expired
before Petitioner filed it, and ask the Court to dis-
miss the Petition as untimely.

**II. DISCUSSION**

**A. One-Year Period of Limitation**

In the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), Congress amended the
federal habeas statute by prescribing a one-year
period of limitation for the filing of habeas peti-
tions by state prisoners. *Stokes v. District Attorney
of County of Philadelphia,* 247 F.3d 539, 541 (3d
Cir.), cert. denied, 122 S.Ct. 364 (2001). Effective
April 24, 1996, the AEDPA provides:
(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person
in custody pursuant to the judgment of a State
court. The limitation period shall run from the latest
of -
(A) the date on which the judgment became final by
the conclusion of direct review or the expiration of
the time for seeking such review ...

28 U.S.C. § 2244(d)(1).

As described above, Petitioner's sentence was im-
posed on March 14, 1997. Although Petitioner did
not file a direct appeal, the period of time in which
he could have filed a timely appeal is encompassed
within the meaning of "the expiration of the time

*Ex. B*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 1858778 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

for seeking [direct] review," as provided in § 2244(d)(1)(A). See *Nara v. Frank,* 264 F.3d 310, 314 (3d Cir.2001) (stating that where petitioner did not file a direct appeal, his conviction became final when the time for filing a direct appeal expired); *Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999) (stating that the limitation period begins to run at the expiration of the time for filing a direct appeal if none is filed). Therefore, Petitioner's conviction became final on April 13, 1997, thirty days after the Superior Court imposed his sentence. *See* Del. R.S.Ct. 6(a)(ii) (prescribing a thirty-day limit from the imposition of sentence for filing a direct appeal in a criminal case).

*2 The Court's docket reflects that the current Petition was filed on April 3, 2002. (D.I.2.) A pro se prisoner's habeas petition, however, is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the district court dockets it. *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998). Petitioner has provided the Court with no documentation establishing the date he delivered his Petition to prison officials for mailing. The Petition itself, however, is dated March 4, 2002. In the absence of proof respecting the date of delivery, the Court deems the Petition filed on March 4, 2002, the earliest possible date he could have delivered it to prison officials for mailing. *See Murphy v. Snyder,* Civ. A. No. 98-415-JJF, at 4 (D.Del. Mar. 8, 1999).

In short, the one-year period of limitation began running on April 14, 1997, the day after Petitioner's conviction became final. His Petition was filed nearly five years later on March 4, 2002. That, however, does not necessarily require dismissal of the Petition as untimely, because the one-year period is subject to statutory and equitable tolling. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:
The time during which a properly filed application for State post-conviction or other collateral review

with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

As described above, Petitioner pursued postconviction relief in the state courts by filing a motion for reduction of sentence and a motion for postconviction relief. Respondents assert that Petitioner's motion for postconviction relief cannot toll the one-year period because it was filed after the one-year period expired.

An examination of the record confirms that more than one year lapsed before Petitioner filed his motion for postconviction relief. First, from April 14, 1997, (the day after his conviction became final) through June 17, 1997, (the date he filed a motion for reduction of sentence), a period of 63 days lapsed during which no postconviction proceeding was pending. Those 63 days are counted toward the one-year period. The period of limitation began running again on September 12, 1997, thirty days after the Superior Court denied his motion for reduction of sentence.[FN1] *See Swartz v. Meyers,* 204 F.3d 417, 422 (3d Cir.2000) (holding that a postconviction proceeding is "pending" under § 2244(d)(2) until the time to appeal expires).

> FN1. The Court's analysis assumes without deciding that Petitioner's motion for reduction of sentence qualifies as an "application for State post-conviction or other collateral review" under § 2244(d)(2). Such a determination is unnecessary in this case because the Petition is untimely even if the one-year period was tolled while Petitioner's motion for reduction of sentence was pending.

One year and seven months later, on April 27, 1999, Petitioner filed his motion for postconviction relief. By that time, however, the one-year period had expired. The Court thus finds that Petitioner's motion for postconviction relief has no effect on the timeliness inquiry in this matter.[FN2] *See Fisher v. Gibson,* 262 F.3d 1135, 1142-43 (10th Cir.2001)

(stating that application for postconviction relief filed after the expiration of the one-year period has no tolling effect), *cert. denied,* 122 S.Ct. 1789 (2002); *Trotman v. Snyder,* Civ. A. No. 01-653-JJF, 2002 WL 1348180, *2 (D. Del. June 17, 2002) (same).

> FN2. The record indicates that on February 16, 1999, Petitioner filed a motion for appointment of counsel for the purpose of filing a Rule 61 motion, which the Superior Court denied on February 18, 1999. Even if the Court deemed Petitioner's motion for appointment of counsel filed on February 16, 1999, as a motion for postconviction relief, it was still filed after the one-year period expired.

*3 In short, the Court finds that more than one year lapsed during which no postconviction proceedings were pending. The Court thus concludes that the statutory tolling provision cannot render the Petition timely filed.

### C. Equitable Tolling

Additionally, the one-year period of limitation may be equitably tolled. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). Equitable tolling applies:
only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at

159 (quoting *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)).

In the instant case, Petitioner asserts that he is poorly educated, lacks legal training, and suffers from a mental illness. (D.I.14.) He also alleges that his former attorney advised him to file a federal habeas petition at the conclusion of his state postconviction proceedings. (*Id.*)

To the extent that Petitioner attempts to invoke equitable tolling due to his lack of education and training, the Court is not persuaded. Several courts of appeals have held that an incarcerated pro se petitioner's lack of education or legal knowledge does not constitute an extraordinary circumstance warranting equitable tolling of the one-year period of limitation. *See Delaney v. Matesanz,* 264 F.3d 7, 15 (1st Cir.2001); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir.2000), *cert. denied,* 531 U.S. 1194 (2001); *United States v. Cicero,* 214 F.3d 199, 203 (D.C.Cir.2000); *Felder v. Johnson,* 204 F.3d 168, 171 (5th Cir.), *cert. denied,* 531 U.S. 1035 (2000). The Court agrees with these courts, and will not equitably toll the one-year period due to Petitioner's lack of education and legal knowledge.

Respecting Petitioner's allegation of mental illness, the Third Circuit has explained that a habeas petitioner's mental incompetence may warrant equitable tolling only if his incompetence "somehow affected the petitioner's ability to file a timely habeas petition." *Nara,* 264 F.3d at 320. Mental incompetence "is not a *per se* reason to toll a statute of limitations." *Id.* Here, Petitioner alleges only that his "psychological situation prohibits [him] to certain limits." (D.I.14.) He does not describe the nature of any mental illness or any limitations due to his mental illness, nor does he explain how any such illness prevented him from pursuing postconviction remedies in a timely fashion. In short, the Court is unable to find any evidence of record suggesting that mental incompetence prevented Petitioner from seeking federal habeas relief within the one-year period of limitation.

*4 Petitioner's final equitable tolling argument is

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1858778 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

that his former attorney advised him to file a federal habeas petition at the conclusion of his state postconviction proceedings. (D.I.14.) Even if true, this allegation does not warrant applying equitable tolling. Nothing in any of Petitioner's submissions suggests that former counsel somehow prevented him from pursuing federal habeas relief in a timely fashion.

In sum, the Court can find no extraordinary circumstances that warrant applying equitable tolling. Accordingly, the Court will dismiss the Petition as time barred.

D. Motions for Appointment of Counsel
As noted above, Petitioner has filed three motions for appointment of counsel. (D.I.4, 7, 14.) It is well established that Petitioner has no Sixth Amendment right to counsel in this habeas proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). A district court, however, may appoint counsel to represent an indigent habeas petitioner "if the interest of justice so requires." Rule 8(c) of the Rules Governing Section 2254 Cases.

For the reasons stated, the Court has determined that the Petition is time barred. Accordingly, his motions for appointment of counsel will be denied as moot.

E. Certificate of Appealability

Finally, the Court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a

plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Petitioner's habeas petition is barred by the one-year period of limitation. The Court is convinced that reasonable jurists would not debate otherwise. Petitioner, therefore, has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

III. CONCLUSION

For the reasons discussed above, the Court will dismiss as untimely the Petition for Writ of Habeas Corpus filed by Petitioner Wayne C. Thomas, and will deny as moot his motions for appointment of counsel. The Court will not issue a certificate of appealability.

*5 An appropriate Order will be entered.

*ORDER*

At Wilmington, this 30th day of July 2002, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:
1. Petitioner Wayne C. Thomas' Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (D.I.2) is DISMISSED, and the relief requested therein is DENIED.
2. Petitioner's motions for appointment of counsel (D.I. 4, 7, and 14) are DENIED as moot.
3. The Court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2002.
Thomas v. Carroll
Not Reported in F.Supp.2d, 2002 WL 1858778 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 652032 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Rogers v. Snyder
D.Del.,2001.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Will ROGERS, Petitioner,
v.
Robert SNYDER, Warden, Respondent.
**No. CIV.A. 00-007-SLR.**

May 9, 2001.

MEMORANDUM ORDER
ROBINSON, District J.

I. INTRODUCTION & BACKGROUND

*1 Currently before the court is petitioner Will Rogers' application for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. (D.I.2) In May 1992, petitioner was indicted by grand jury and charged with multiple counts of robbery, weapons offenses, assault, and conspiracy. On January 20, 1993, petitioner pled guilty to five counts of first degree robbery, two counts of second degree robbery, three counts of second degree assault, and one count of third degree assault.

Prior to sentencing, petitioner filed a motion pursuant to Super. Ct. Cr. R. 32(d) to withdraw his guilty plea on grounds of his alleged incompetency at the time of the plea. In response to this motion, the Delaware Superior Court scheduled a competency hearing, which was held on August 17, 1993. The first witness to testify at the hearing was Dr. Kutas Tavlan-Dogan, the former Director of Forensic Psychiatry at the Delaware State Hospital and then in private practice. Based on an examination of petitioner as well as a review of the audio and video tapes of his interview with the arresting officer on April 24, 1992, Dr. Dogan opined that petitioner was mildly mentally retarded but that there was no evidence of mental illness. See State v. Rodgers, 1994 WL 164573, at *2 (Del.Super.Ct. Apr. 14, 1994). She diagnosed petitioner as having "Personality Disorder NOS with Passive/Ag-

gressive and Anti-Social Traits." Id. In addition, she testified that she believed there "was an 'element of malingering' present in [petitioner's] conduct." Id. It was Dr. Dogan's opinion that petitioner was competent to have entered his guilty plea on January 20, 1993. See id. at *3.

The next witness to testify, Dr. Irwin G. Weintraub, a board-certified clinical psychologist, disagreed with Dr. Dogan's conclusions. He opined that petitioner was not competent to stand trial or to have entered a guilty plea. See id. In fact, Dr. Weintraub testified that petitioner was moderately mentally retarded and had been "insane" at the time of the alleged robberies. Id. Dr. Weintraub diagnosed petitioner as suffering from schizophrenia, undifferentiated type. See id. His evaluation was based upon an examination of petitioner; Dr. Weintraub did not review the April 24, 1992 audio and video tapes. See id.

During the competency hearing, the Superior Court "closely observed" petitioner. Id. at *4. According to the court, petitioner's

courtroom behavior was strange: no communication appeared to be ongoing between [petitioner] and his counsel ...; [petitioner's] appearance was tousled and unkempt; he periodically made unusual gestures, slumped forward frequently and from all outward appearances appeared not to be appreciating or comprehending the proceedings. He occasionally uttered incomprehensible statements.

Id. Given petitioner's behavior and the two diametrically opposed opinions of his competency, the Superior Court proposed, and counsel agreed to, petitioner's evaluation by a third expert, Dr. Antonio Sacre, Director of Forensic Psychiatry at the Delaware State Hospital. See id. at *4.

*2 In his written report, Dr. Sacre diagnosed petitioner as being "mildly" mentally retarded and having "Personality Disorder with Anti-Social Traits." Id. He found some degree of malingering but no signs of psychosis. See id. According to his written

Ex. C
© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 652032 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

report, it was Dr. Sacre's opinion that petitioner had an " 'understanding of the legal process and how to handle his case." ' *Id.* At the continued competency hearing on February 2, 1994, however, Dr. Sacre testified that petitioner was " 'not competent' to stand trial or otherwise to assist his counsel." *Id.* The Superior Court attributed Dr. Sacre's change in position to his "observation of [petitioner's] continuing strange courtroom behavior." *Id.* According to the Superior Court, petitioner's conduct was similar to that observed on August 17, 1993, except that at the continued hearing he "seemed also to be occasionally placing pieces of paper in his hair." *Id.*

On April 14, 1994, the Superior Court denied petitioner's motion to withdraw his guilty plea, finding that petitioner, "although somewhat mentally retarded and of limited intellectual ability," was competent at the time of the taking of the guilty plea. *Id.* at *9. The court's finding stemmed in part from the disparate behavior petitioner had exhibited since his arrest in April 1992. According to the court,

[i]f [petitioner] had exhibited the type of strange behavior that he exhibited in court on August 17, 1993 and on February 2, 1994 (and which he also exhibited to some degree to the three interviewing psychiatrists) on April 24, 1992, at the time of his arrest, on January 20, 1993 when he entered the guilty plea[,] or in February 1993 at the time of the presentence interview, his competency would be much more in question. However, his demeanor as recorded on video and audio tape and as indicated during the guilty plea and during the presentence interview [FN1] sheds important light on this issue since his conduct at those later times was at such great variance with his courtroom conduct (as well as at such variance with his conduct in interviews with Drs. Dogan, Weintraub and Sacre).

> FN1. According to the Superior Court, there was "no indication whatsoever of any unusual or bizarre behavior" at the time of petitioner's guilty plea or his arrest. *Rodgers, 1994 WL at *6.* In fact, the court described petitioner's demeanor during the

video statement as that "of a calm, composed, often monosyllabic individual who nevertheless responded essentially coherently and responsively to the police officer's questions." *Id.* The court further found that the audio tape revealed petitioner to be "oftentimes quite articulate and responsive." *Id.*

*Id.* at *8. The court, agreeing with Dr. Dogan's assessment, determined there was an " 'element of malingering' present" in petitioner's conduct. *Id.* at *9. The court opined that such malingering could be explained by petitioner's stated preference to be housed at the Delaware State Hospital rather than at a Department of Correction facility and his wish not to testify against his co-defendant. *See id.* at *8. The Superior Court concluded that petitioner's case should proceed to sentencing. *See id.* at *9.

On August 19, 1994, petitioner was sentenced to a total of twenty-four (24) years imprisonment. He did not file a direct appeal.

On October 13, 1994, petitioner filed a motion for state post-conviction relief pursuant to Super. Ct. Cr. R. 61. In his motion, petitioner alleged ineffective assistance of counsel and procedural defects in the taking of his guilty plea. The Superior Court denied the motion on January 30, 1995. *See State v. Rogers,* Cr. A. No. IN92-05-0590, Alford, J. (January 30, 1995) (ORDER). No appeal was taken.

*3 On August 19, 1997, petitioner filed a second motion for post-conviction relief with the Delaware Superior Court, requesting a new evidentiary hearing on the issue of his competency to have entered the January 20, 1993 guilty plea. In his motion, petitioner alleged that on September 27, 1995 he was extradited to Pennsylvania to stand trial on various criminal charges. (D.I. 10, Appellant's Opening Brief) There, according to petitioner, in March 1996 he was examined by a psychiatrist who determined he was legally incompetent to stand trial on the Pennsylvania charges.[FN2] (D.I. 10, Appellant's Opening Brief) An order of *nolle prosequi* was entered as to the Pennsylvania charges on May

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2001 WL 652032 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

3, 1996. (D.I. 10, Appellant's Appendix) The Superior Court denied petitioner's motion on April 27, 1998 on the ground that the issue of his competency at the time he entered his guilty plea had been previously adjudicated and thus the motion was procedurally barred pursuant to Super. Ct. Cr. R. 61(i)(4). (D.I. 10, Appellant's Opening Brief) Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's decision on December 9, 1998. *See Rogers v. State,* No. 223, 1998, 723 A.2d 398, 1998 WL 986013 (Del. Dec. 9, 1998).

> FN2. The evidence submitted by petitioner in support of this assertion consisted of an application for a competency examination, an order by the Court of Common Pleas of Delaware County directing that he undergo a psychiatric evaluation by the Delaware County Psychiatric Consultant, and a *nolle prosequi* order dismissing the Pennsylvania charges. (D.I. 10, Appellant's Opening Brief and Appellant's Appendix)

Petitioner's instant application for a writ of habeas corpus is dated November 4, 1999. (D.I.2) The Clerk of the District Court received the petition on December 13, 1999 and docketed petitioner's habeas application as filed on January 5, 2000. (D.I.2) In his application for federal habeas relief, petitioner challenges his conviction on the ground that the state court's denial of a "retrospective competency hearing constituted abuse of discretion" in light of the "evidence raising [a] bona fide doubt as to his competency." [FN3] (D.I.2) Respondent filed an answer, asserting that petitioner's application is untimely under 28 U.S.C. § 2244(d)(1)(A) and, therefore, must be dismissed.[FN4] (D.I.8) Although petitioner's May 4, 2000 motion for an enlargement of time in which to file a traverse (D.I.11) was granted on May 15, 2000, to date petitioner has not submitted such a filing.[FN5] For the reasons stated below, the court will dismiss the petition and deny the requested relief.

> FN3. Respondent concedes that petitioner has exhausted his state court remedies with

respect to this claim. (D.I. 8 at 3)

> FN4. Respondent's answer also addresses the merits of petitioner's claim. (D.I. 8 at 4-6)

> FN5. The motion for enlargement also contained a request that the State produce certain transcripts. The State complied with that request on November 6, 2000, after being granted an extension to produce those records. On December 8, 2000, the court received an unsigned request for a subpoena duces tecum filed by petitioner. The request sought petitioner's psychiatric evaluations that were ordered on October 23, 1995 and March 7, 1996. (D.I.15)

## II. DISCUSSION

Effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996),[FN6] amended § 2254 to impose a one-year statute of limitations on the filing of a federal habeas petition by a state prisoner. *See* 28 U.S.C. § 2244(d)(1); *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 619 n. 1 (3d Cir.1998) (holding that the one-year limitations period set forth in § 2244(d)(1) is a statute of limitations subject to equitable tolling, not a jurisdictional bar). The one-year limitations period begins to run from the latest of:

> FN6. Since petitioner's habeas application was filed following the enactment of AEDPA, the court will apply the amended standards set forth in AEDPA to petitioner's claims for federal habeas corpus relief. *See Lindh v. Murphy,* 521 U.S. 320, 326-27 (1997).

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

*4 (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 652032 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

AEDPA further provides that the statute of limitations is tolled during the time that a state prisoner is attempting to exhaust his claims in state court. *See id.* § 2244(d)(2). Section 2244(d)(2) states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.* A "properly filed application" under § 2244(d)(2) is a petition "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998). Such a petition is considered "pending" within the meaning of § 2244(d)(2) during the time a state prisoner is pursuing his state post-conviction remedies, including the time for seeking discretionary review of any court decisions whether or not such review was actually sought. *See Swartz v. Meyers,* 204 F.3d 417, 424 (3d Cir.2000).

In order to avoid the "impermissibly retroactive" application of § 2241(d)(1)' s time limitation, the United States Court of Appeals for the Third Circuit has mandated that petitioners whose convictions became final before April 24, 1996 are entitled to a one-year grace period following the effective date of AEDPA in which to file habeas petitions. *See Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998). The Third Circuit has explained that the effect of its ruling in *Burns* is to "make ... all other convictions in this circuit otherwise final before the effective date of the AEDPA, April 24, 1996, final on that day for purposes of calculating the limita-

tions period." *United States v. Duffus,* 174 F.3d 333, 334 (3d Cir.1999). Petitions filed after the one-year grace period, however, are subject to dismissal for failure to comply with the limitations period imposed by AEDPA. *See id.*

In the instant action, petitioner was adjudged guilty on April 19, 1994. Although petitioner had the right to appeal the Superior Court's judgment of conviction, state law required him to do so within thirty (30) days after his sentence was imposed. Del.Supr. Ct. R. 6(a)(ii). Thus, petitioner was obligated to file and serve his direct appeal by May 19, 1994. Because petitioner failed to file a timely notice of appeal, his judgment of conviction became final on May 19, 1994, the date of "the expiration of the time for seeking [direct] review."[FN7] 28 U.S.C § 2244(d)(1). Since petitioner's conviction became final before the effective date of AEDPA, the statute of limitations with respect to petitioner began to run on April 24, 1996, when AEDPA took effect, and expired one year later on April 23, 1997.[FN8] Petitioner filed his application for federal habeas corpus relief on November 4, 1999,[FN9] well after the end of the limitations period. Consequently, his petition is time-barred.[FN10]

> FN7. Had petitioner appealed his conviction to the Delaware Supreme Court, the statute of limitations would have started to run on the date on which his time for filing a timely petition for *certiorari* review expired. *See* U.S.Supr. Ct. R. 13; *Kapral v. United States,* 166 F.3d 565, 575, 577 (3d Cir.1999) (holding that a judgment becomes "final" in the context of § 2254 and § 2255 "on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for *certiorari,* or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires"); *Morris v. Horn,* 187 F.3d 333, 337 n. 6 (3d Cir.1999).

> FN8. Since petitioner's first motion for

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 652032 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

state post-conviction relief was filed before the limitations period of § 2244(d)(1) began to run and the second was filed long after the expiration of the limitations period, the tolling mechanism of § 2244(d)(2) is not implicated. Similarly, § 2244(d)(1)(D) is not implicated in the instant action since the "evidence" on which petitioner bases his federal application for habeas relief was "discovered" in March 1996, one month before the one-year limitations period began to run.

FN9. Courts in this district have treated the date the petition was signed (in the absence of proof of mailing) as the relevant date for purposes of calculating compliance with the limitations period. *See, e.g., Murphy v. Snyder,* Civ. A. No., 98-415-JJF, at 4 (D.Del. Mar. 8, 1999).

FN10. To date, petitioner has not sought equitable tolling of the statute of limitations. The court notes in this regard that "equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair." ' *Miller,* 145 F.3d at 618 (quoting *Shendock v. Director, Office of Workers' Comp. Programs,* 893 F.2d 1458, 1462 (3d Cir.1990) (in banc)) (alterations in original). As the Third Circuit has noted, "[t]his 'unfairness' generally occurs 'when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights." ' *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999) (quoting *Miller,* 145 F.3d at 618) (alterations in original). Although some courts have recognized mental illness as a basis for equitable tolling of a federal statute of limitations, they have done so only where the mental "illness in fact prevent[ed] the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996); *see also Nunnally v., MacCaus-*

*land,* 996 F.2d 1, 6 (1st Cir.1993); *United States v. Page,* No. 99 C 6067, 1999 WL 1044829, at *1-2 (N.D.Ill. Nov. 16, 1999); *Decrosta v. Runyon,* 1993 WL 117583, at *2-3 (N.D.N.Y. Apr. 14, 1993); *Speiser v. United States Dept. of Health & Human Services,* 670 F.Supp. 380, 384 (D.D.C.1986); *cf. Accardi v. United States,* 435 F.2d 1239, 1241 n. 2 (3d Cir.1970) ("Insanity does not prevent a federal statute of limitations from running."); *Boos v. Runyon,* 201 F.3d 178, 184 (2d Cir.2000) ("The question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is ... highly case-specific."). Even assuming the correctness of such an approach, petitioner has not made the requisite showing. According to the affidavit of a fellow prisoner, petitioner has been diagnosed as a paranoid schizophrenic and is being treated with a number of prescribed medications. (D.I.3, ¶¶ 9-10) Such information alone does not establish that petitioner was incapable of preparing and filing a habeas petition between April 24, 1996 and April 23, 1997. *See Runyon,* 77 F.3d at 192 ("Most mental illnesses today are treatable by drugs that restore the patient to at least a reasonable approximation of normal mentation and behavior. When his illness is controlled he can work and attend to his affairs, including the pursuit of any legal remedies that he may have."). Therefore, at this juncture, equitable tolling of the statute of limitations is not warranted.

*5 Even if the court were to address petitioner's claim on the merits, it is unlikely that the court would afford him relief. The AEDPA increased the deference a federal court must pay to the factual findings and legal determinations made by state courts. *See Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996) (finding amended § 2254 to be a "more deferential test" with respect to state courts' legal and factual findings). Like the prior § 2254(d), amended § 2254(e)(1) provides that factu-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

al determinations made by a state court are presumed correct. *See* 28 U.S.C. § 2254(e)(1). The amended § 2254(e) goes further, however, by placing on the petitioner the burden of rebutting the presumption by clear and convincing evidence. *See id.* Here, the Superior Court made a careful competency determination after seeing the petitioner numerous times, hearing the testimony of three experts, and reviewing video and audio tapes of petitioner during his interview with the arresting officer. Petitioner would have great difficulty proving by clear and convincing evidence that the Superior Court erred. Furthermore, any new evidence indicating that petitioner was not competent to stand trial in March 1996 is not relevant to whether petitioner was competent to enter a guilty plea in 1993.

### III. CONCLUSION

Therefore, at Wilmington, this 9th day of May, 2001;

IT IS ORDERED that:

1. Petitioner's application seeking habeas relief pursuant to 28 U.S.C. § 2254 (D.I.2) is dismissed and the writ is denied.

2. For the reasons stated above, petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and a certificate of appealability is not warranted. *See United States v. Eyer,* 113 F.3d 470 (3d Cir.1997); 3d Cir. Local Appellate Rule 22.2 (1998).

3. Petitioner's request for subpoena duces tecum (D.I.15) is denied as moot.

D.Del.,2001.
Rogers v. Snyder
Not Reported in F.Supp.2d, 2001 WL 652032 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,               )
                                 )
            v.                   )    I.D.#: 0208020744
                                 )
KEVIN MCCRAY,                    )
                                 )
            Defendant.           )

## ORDER

On December 28, 2005, Defendant filed a motion to withdraw the guilty plea he entered on July 29, 2003. The motion claims that when he pleaded guilty to three counts of Robbery First Degree, Defendant was incompetent by reason of mental illness. After reviewing the record preliminarily, it seems unlikely that Defendant's claim has merit.

After Defendant pleaded guilty and after he was sentenced in Delaware, Defendant was transferred to federal custody and he was held in a New Jersey prison. After this court reviewed the docket in the pending, federal prosecution, it appears that Defendant is now incompetent to stand trial on the federal charges that are pending against him. This court understands that Mr. McCray is undergoing psychiatric treatment called for by the Federal District Court in New Jersey.



CERTIFIED AS A TRUE COPY
ATTEST: SHARON AGNEW
PROTHONOTARY
BY

As best as the court can determine for now, it appears that Mr. McCray's mental condition deteriorated at some point after the proceedings in Delaware concluded. The court, however, cannot be certain about that. Meanwhile, due to Mr. McCray's current situation, the court is not in a position to decide the motion filed in December 2005. (It appears that motion was filed by a fellow inmate, on Mr. McCray's behalf.)

Accordingly, the pending motion is ***DENIED***, without prejudice to Defendant's refiling the motion after he is restored to competence. Until then, Defendant is in federal custody and delay in considering his motion here will do him no harm.

**IT IS SO ORDERED.**

DATE: ___July 14, 2006___     _____
                                                Judge

oc:  Prothonotary (Criminal Division)
pc:  Martin O'Connor, Deputy Attorney General
       Robert Goff, Deputy Attorney General
       Kevin McCray

2

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2007, I electronically filed the attached

documents with the Clerk of Court using CM/ECF. I also hereby certify that on August 3,

2007, I have mailed by United States Postal Service, the same documents to the following

non-registered participant:


Kevin McCray
Prisoner No. 3183799
Monmouth County Correctional Institution
1 Waterworks Road
P.O. Box 5007
Freehold, NJ 07728

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date:  August 3, 2007