IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN MCCRAY, : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | Civil Action No. 07-191-JJF |
| : | |
| JOSEPH W. OXLEY, Sheriff, : | |
| and ATTORNEY GENERAL OF THE : | |
| STATE OF DELAWARE, : | |
| : | |
| Respondents. : | |

---

Kevin McCray. <u>Pro</u> <u>Se</u> Petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

---

**<u>MEMORANDUM OPINION</u>**[1]


May 14, 2008
Wilmington, Delaware

---

[1]This case was originally assigned to the Vacant Judgeship and re-assigned to this Court on February 1, 2008.

Farnan, District Judge

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Kevin McCray ("Petitioner"). (D.I. 2.) For the reasons discussed, the Court concludes that the Petition is not time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1). Additionally, although the Petition appears to contain only unexhausted claims, the Court will withhold a final decision with respect to the issue of exhaustion until Respondent supplements the record in the manner set forth below and in the accompanying Order.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner was arrested on August 28, 2002 and subsequently indicted on four counts of first degree robbery, four counts of possession of a firearm during the commission of a felony, two counts of second degree burglary, attempted robbery, attempted burglary, kidnaping, and a variety of related offenses. See (D.I. 18.) In July 2003, Petitioner pled guilty to three counts of first degree robbery and one count of possession of a deadly weapon during the commission of a felony.  The Delaware Superior Court sentenced Petitioner to an aggregate of twenty-eight years at Level V incarceration, suspended after sixteen years for Level IV supervision, suspended after one year for two years of Level II supervision.  Petitioner did not appeal his 2003 conviction

1

and sentence. (D.I. 16.)

In July 2005, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 Motion"). The Delaware Superior Court denied the Motion on August 18, 2005. See (D.I. 18, State v. McCray, ID No.0208020744, Letter Order (Del. Super. Ct. Aug. 18, 2005)). Petitioner filed a second Rule 61 Motion on October 27, 2005, which the Superior Court summarily dismissed as repetitive under Rule 61(i)(2). See (D.I. 18, State v. McCray, ID No. 0208020744, Order (Del. Super. Ct. Dec. 19, 2005)). Petitioner did not appeal either of these decisions.

Petitioner, with the help of another inmate, also filed a Motion to Withdraw Guilty Plea on December 28, 2005. The Superior Court dismissed the Motion without prejudice in February 2006, and Petitioner did not appeal that decision. See (D.I. 18, State v. McCray, ID No. 0208020744, Order (Del. Super. Ct. Feb. 14, 2006)).

## II. DISCUSSION

Petitioner presents three grounds for habeas relief: (1) counsel provided ineffective assistance by failing to investigate the issue of Petitioner's mental incompetency; (2) the Superior Court did not conduct an adequate inquiry into Petitioner's competency; and (3) the State violated his right to a speedy trial under 18 U.S.C. § 3161. (D.I. 2.) Respondent filed an

Answer requesting the Court to dismiss the Petition as untimely, or alternatively, to dismiss the Petition without prejudice for failure to exhaust state court remedies. (D.I. 16.) The Court will address each of Respondent's arguments.

### A. The Petition Is Not Time-barred

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and habeas petitions filed in federal courts after this date must comply with the AEDPA's requirements. See generally Lindh v. Murphy, 521 U.S. 320, 336 (1997). The AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The Petition, filed in 2007, is subject to the one-year limitations period contained in § 2244(d)(1). See Lindh, 521

3

U.S. at 336. Petitioner does not allege, nor can the Court discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Accordingly, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. See Kapral v. United States, 166 F.3d 565, 575, 578 (3d Cir. 1999); Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner for his first degree robbery conviction on December 5, 2003, and he did not appeal. Therefore, Petitioner's judgment of conviction became final on January 5, 2004.[2] See Del. Supr. Ct. R. 6(a)(ii)(establishing a 30 day period for timely filing a notice of appeal). Accordingly, to comply with the one-year limitations period, Petitioner had to file his § 2254 application by January 5, 2005. See Wilson v. Beard, 426 F.3d 653 (3d Cir. 2005)(holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions).

---

[2]The 30 day period for filing a notice of appeal actually expired on January 4, 2004, which fell on a Sunday. Therefore, Petitioner had until the end of the day on Monday, January 5, 2004, to file a timely notice of appeal. See Del. Sup. Ct. R. 11.

Petitioner did not file his Petition until March 15, 2007,[3] approximately two years and two months after the AEDPA's statute of limitations expired. Thus, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled. See Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999). The Court will discuss each doctrine in turn.

### 1. Statutory Tolling

Statutory tolling of the one-year limitations period is authorized by Section 2244(d)(2) of the AEDPA, which provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). A properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals. Swartz v. Meyers, 204 F.3d 417, 424-25 (3d Cir. 2000). However, a properly filed application for State

---

[3] It is well-settled that a prisoner's pro se habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court. See Longenette v. Krusing, 322 F.3d 758, 761 (3d Cir. 2003)(the date on which a prisoner transmitted documents to prison authorities is to be considered the actual filing date); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). The Petition is dated March 13, 2007, which was a Saturday. Therefore, the Court adopts March 15, 2007, the first Monday following date contained on the Petition, as the filing date. See Fed. R. Civ. P. 6(a); Woods v. Kearney, 215 F. Supp. 2d 458, 460 (D. Del. 2002); Gholdson v. Snyder, 2001 WL 657722, at *3 (D. Del. May 9, 2001).

5

collateral review will only toll the limitations period if it was filed and pending before the expiration of the AEDPA's limitations period. See Price v. Taylor, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002).

    In this case, Petitioner's Rule 61 Motions and his Motion to Withdraw the Guilty Plea do not have any statutory tolling effect because they were filed after the AEDPA's limitations period had already expired. Therefore, the statutory tolling doctrine does not render the Petition timely.

### 2. Equitable Tolling

    According to well-settled Third Circuit precedent, the AEDPA's limitations period may be equitably tolled "only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). In order to trigger equitable tolling, a petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims" and that he was prevented from asserting his rights in some extraordinary way; mere excusable neglect is insufficient. Miller v. New Jersey Dept. Of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998)(citations omitted); Schlueter v. Varner, 384 F.3d 69, 77 (3d Cir. 2004). Consistent with these principles, the Third Circuit has specifically limited equitable tolling of AEDPA's limitations period to the following

circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

Jones, 195 F.3d at 159; see also Brinson v. Vaughn, 398 F.3d 225, 231 (3d Cir. 2005)(equitable tolling is appropriate where the court misleads petitioner about steps necessary to preserve habeas claim).

Here, Petitioner appears to argue that his mental incompetence constitutes an extraordinary circumstance justifying equitable tolling. According to Third Circuit precedent, "mental incompetence is not a per se reason to toll a statute of limitations. Rather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition." Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001), overruled in part on other grounds by Carey v. Saffold, 536 U.S. 214 (2002). Although the Third Circuit has not set out specific criteria for determining when a petitioner's incompetence affected his ability to timely file a habeas petition, other courts in this Circuit have considered the following factors when presented with an equitable tolling argument premised on the petitioner's mental incompetency: (1) was the petitioner adjudicated incompetent and, if so, when did the adjudication occur in relation to the habeas statutory

7

period; (2) was the petitioner institutionalized for his mental impairment; (3) has the petitioner handled or assisted in other legal matters which required action during the federal limitations period; and (4) has the petitioner supported his allegations of impairment with extrinsic evidence such as evaluations and/or medications. See Griffin v. Stickman, 2004 WL 1821142, at *6 (E.D. Pa. Aug. 11, 2004)(collecting cases).

The record provides the following information. In August 2004, a five-count indictment filed in the United States District Court for the District of New Jersey charged Petitioner with one count of conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), three counts of a Hobbs Act robbery in violation of 18 U.S.C. § 924(c)(1), and one count of using a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1). The charges stemmed from the robberies of three check cashing stores in Englewood, Parsippany, and South River, New Jersey that occurred between September 1, 2001 and November 9, 2001. Petitioner's alleged role in the robberies, during which firearms were brandished and the stores' employees were threatened and physically assaulted, was "organizer, planner [and] provider of equipment" (including weapons). Petitioner was also alleged to have acted as a look-out outside of the premises during the robberies. Approximately $240,000 was stolen in these incidents. U.S. v. McCray, 474 F. Supp. 2d 671 (D.N.J. 2007).

After the New Jersey robberies occurred, but before the indictment was returned in the District Court of New Jersey, Petitioner pled guilty in the Delaware Superior Court to charges arising from three robberies committed in Delaware in 2002. The Superior Court sentenced Petitioner on December 5, 2003. Id.

Petitioner's trial in the District Court of New Jersey was scheduled to begin on December 2, 2004. A jury was selected on December 1, 2004, but before the jury was sworn in on December 2, 2004, Petitioner's counsel, David Glazer ("Glazer"), advised the court of his concern that Petitioner was not competent to stand trial. Glazer's concern stemmed in part from Petitioner's behavior during jury selection the previous day, when Petitioner interrupted the proceedings several times to make irrelevant statements or inquire into irrelevant legal issues. Glazer advised the District Court of New Jersey that Petitioner's mental state had deteriorated over the previous two months, and as a result, Petitioner was giving little, if any, assistance to Glazer in preparing a defense. Additionally, Glazer stated that he had just learned the previous day that Petitioner had been admitted to a mental institution at some point in his life. Id.

Based on Glazer's representations as well as its own observation of Petitioner's behavior, the District Court of New Jersey ordered a continuance to permit Petitioner to undergo a psychiatric evaluation. Psychiatrist Richard Dudley, M.D.,

9

performed an initial evaluation, and according to his report dated January 7, 2005, Petitioner had "significant cognitive difficulties" that may have been present since birth and/or as a result of a severe car accident when Petitioner was 15 years old. Dr. Dudley stated that Petitioner was unable to adequately understand what was going on at "important points" of his federal case, and therefore, he became easily overwhelmed and paranoid. Dr. Dudley concluded that "as a result of Petitioner's neuropsychiatric difficulties, he is currently unfit to proceed with this matter," and recommended that Petitioner be placed in a forensic psychiatric facility for further evaluation. Id.

On January 18, 2005, the District Court of New Jersey ordered a further psychiatric evaluation of Petitioner to be conducted at a federal correctional facility. Psychologist William Ryan, Ph.D issued a report on June 2, 2005, stating that Petitioner suffered from Post Traumatic Stress Disorder ("PTSD") and a psychotic disorder, as well as mild mental retardation. Dr. Ryan concluded that Petitioner was not competent to stand trial due to "significant limitations in competency from both mental illness (i.e., paranoid delusions) and mental defect (i.e., mental retardation)." During a hearing conducted held by the District Court of New Jersey on July 26, 2005, Dr. Ryan testified that Petitioner was incompetent to stand trial. The District Court of New Jersey then ordered Petitioner to be

transferred to a hospital facility for treatment and further evaluation. Id.

Petitioner was admitted to the Federal Medical Center located in Butner, North Carolina on August 24, 2005. After a four month evaluation period, psychologist Edward E. Landis, Ph.D and psychiatrist Ralph Newman, M.D. issued a report dated January 31, 2006, advising that the staff at the medical center was unable to form a definitive opinion as to Petitioner's competency to stand trial. According to the report, Petitioner refused to cooperate with the evaluation process and he refused to complete psychological testing. The report also noted that the evaluation of Petitioner was complicated by "a dearth of detailed, objective history," and recommended an additional 120-day evaluation period. Id.

The District Court of New Jersey ordered an additional period of evaluation to take place at FMC Butner. In a report dated July 17, 2006, Drs. Landis and Newman concluded that Petitioner was incompetent to stand trial. This conclusion was based on the observations made during both of Petitioner's admissions at FMC Butner. More specifically, the doctors explained that the conclusion was premised on: (1) Petitioner's uncooperative responses to their attempts to interview him; (2) their observations of Petitioner's demeanor and his mental status; (3) their observations of Petitioner's behavior while at

the hospital; (4) their review, to the extent available, of school and court records; (5) their review of the reports from Drs. Dudley and Ryan; (6) their monitoring of Petitioner's phone calls; and (7) a physical exam. Drs. Landis and Newman diagnosed Petitioner as paranoid and delusional, but opined that there was a substantial probability that treatment with antipsychotic medication would restore Petitioner's competency to stand trial. However, Petitioner expressly refused to take any medication, apparently fearing he would be poisoned. Id.

Thereafter, the Government sought authorization from the District Court of New Jersey to allow the staff at FMC Butner to involuntarily medicate Petitioner in accordance with Sell v. United States, 539 U.S. 166 (2003), for the sole purpose of rendering Petitioner competent to stand trial. After a lengthy hearing and analysis, the District Court of New Jersey denied the motion on January 25, 2007. U.S. v. McCray, 474 F. Supp. 2d 671 (D.N.J. 2007). Petitioner then filed a motion to dismiss the indictment, which the District Court of New Jersey granted on February 21, 2007. U.S. v. McCray, Crim. No. 04-493, Order (D.N.J. Feb. 21, 2007). The Government appealed, but the Third Circuit Court of Appeals dismissed the appeal by agreement of both parties on June 13, 2007. U.S. v. McCray, No. 07-1547, Order (3d Cir. June 13, 2007).

To summarize the pertinent facts, the one year filing period

12

at issue in this case extended from January 5, 2004 through January 5, 2005. The District Court of New Jersey began its inquiry into the status of Petitioner's competency to stand trial on December 2, 2004. On January 7, 2005, one psychiatrist opined that Petitioner was incompetent to stand trial. After further intensive psychiatric evaluations by three other psychiatrists or psychologists, the District Court of New Jersey determined that Petitioner was incompetent to stand trial on July 26, 2005. The record indicates that Petitioner was still incompetent to stand trial on February 21, 2007, when the United States District Court Of New Jersey dismissed Petitioner's Federal indictment,[4] and there is no indication that Petitioner regained his competency prior to March 15, 2007, the filing date of the instant Petition.[5] See U.S. v. McCray, Crim. No. 04-493-JAP, Order (D.N.J. Feb. 21, 2007).

Considering this record within the framework set forth in Griffin, the Court makes the following observations and findings.

---

[4] See US v. McCray, Crim. No. 04-493-JAP, Order (D.N.J. Feb. 21, 2007).

[5] The Court is aware that other district courts have viewed a petitioner's filing of a habeas petition during the alleged period of incompetency as "strong evidence that [the petitioner] had the ability to pursue his legal rights during the one-year limitations period." Rhodes v. Senkowski, 82 F. Supp. 2d 160, 171-72 (S.D.N.Y. 2000). Here, however, the Court does not view the fact that the Petition was filed during Petitioner's period of incompetency as evidence of his ability to comply with the AEDPA's limitations period because another inmate prepared the Petition. See (D.I. 2, at signature page of attached memorandum)

13

Petitioner has been institutionalized for his mental impairment, his allegations of impairment are supported by extrinsic evidence, and he was adjudicated incompetent to stand trial. The fact that Petitioner was adjudged incompetent to stand trial demonstrates that Petitioner did not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and he did not possess a rational and factual understanding of the proceedings against him. See Dusky v. U.S., 362 U.S. 402 (1960). Presumably, Petitioner's adjudicated incompetency to stand trial relates back at least as far as December 2, 2004, the date on which defense counsel Glazer raised the issue to the District Court of New Jersey. On December 2, 2004, there were 33 days remaining in the AEDPA's limitations period. Therefore, the Court concludes that Petitioner's incompetency affected his ability to file a habeas petition during the remaining 33 days of the AEDPA's limitations period.[6]

Moreover, the record indicates that Petitioner was incompetent to stand trial when he filed the Petition in March 2007, and there is a strong likelihood that Petitioner's competency is still an issue at present. Consequently, the Court will equitably toll the limitations period from December 2, 2004

---

[6] At this juncture, the Court will not address the issue of Petitioner's competency prior to December 2, 2004.

14

until such time that Petitioner is "restored" to competency. Accordingly, the Court will not dismiss the Petition as time-barred.[7]

### B. The Court Requires More Information Before Dismissing the Petition Without Prejudice For Failure To Exhaust State Remedies

Absent exceptional circumstances, a federal court cannot review the merits of claims asserted in a habeas petition unless the petitioner has exhausted all means of available relief for the claims under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the state courts to consider it on the merits. See

---

[7] The Court recognizes that Petitioner filed three motions in the Delaware Superior Court after the District Court of New Jersey declared him incompetent to stand trial. Nevertheless, after viewing these motions in context with the entire record, the Court concludes that these filings do not weigh against equitable tolling. Petitioner's first Rule 61 motion, filed in August 2005, is a bare-boned document which the Superior Court summarily dismissed. Petitioner did not appeal the Superior Court's denial of the Rule 61 motion. Instead, he filed an exact copy of the first Rule 61 motion in the Superior Court, suggesting that Petitioner did not comprehend the procedure for pursuing post-conviction relief in Delaware. The Court also disregards the Motion To Withdraw Guilty Plea filed in the Superior Court in December 2005 in its equitable tolling inquiry because another inmate filed the motion on Petitioner's behalf.

<u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995); <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997).

The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. <u>Werts v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000). Consequently, a petitioner "shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). If a petitioner presents a petition containing only unexhausted habeas claims to a federal court, the federal court must, in the interest of comity, dismiss the petition without prejudice in order to provide the petitioner with an opportunity to exhaust state remedies. See <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982)(explaining rule requiring total exhaustion); <u>Lines v. Larkins</u>, 208 F.3d 153, 159-60 (3d Cir. 2000).

In this case, Respondent argues that Petitioner has failed to exhaust state remedies because the Superior Court indicated in its February 2006 Order that it would consider Petitioner's motion to withdraw the guilty plea "after he is restored to competence." <u>State v. McCray</u>, ID# 0208020744, Order (Del. Super. Ct. Feb. 14, 2006). In other words, Petitioner has an available

16

state remedy for his claims because the Superior Court did not clearly foreclose his ability to present the pending federal habeas claims to the Delaware State Courts sometime in the future.

After reviewing the record, the Court agrees that Petitioner has not exhausted state remedies in Delaware as of August 2, 2007, the date on which Respondent filed its Answer. However, Petitioner may have taken actions since August 2, 2007 to demonstrate his restoration to competency and he may be presently engaged in court proceedings that would satisfy the exhaustion requirement. Therefore, to the extent possible, Respondent shall supplement the record with a written update on the status of Petitioner's mental health, as well as any post-conviction proceedings filed in the Delaware State Courts since Petitioner filed the instant Petition in March 2007. Once the Court receives and reviews Respondent's supplemental information, the Court will determine the next appropriate step for this case.

## IV. CONCLUSION

For the reasons discussed, the Court concludes that Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is not time-barred. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court is persuaded that reasonable jurists would not find this conclusion to be debatable, and therefore, the Court declines to issue a

certificate of appealability. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

   Additionally, although it appears that Petitioner has not exhausted state remedies for any of his habeas claims, the Court shall withhold a final decision on this issue until it has reviewed the supplemental information provided by Respondent as explained in the Order accompanying this Opinion.